Welch, J.
The plaintiffs, two elementary school principals in the Peabody School District, seek partial summary judgment on the issues of liability and declaratory judgment. The plaintiffs filed suit complaining that the Superintendent of the Peabody School District and the School Committee failed to comply with M.G.L.c. 71, §41 and §59B of the Educational Reform Act. The plaintiffs argue that pursuant to §41, the Superintendent has a obligation to negotiate in good faith with the plaintiffs concerning their employment contract for the upcoming year. The plaintiffs contend that this good faith negotiation prohibits the Superintendent from threatening termination (including a “take it or look for another job" type of statement) during these negotiations. In essence, the plaintiffs seek a declaration that the Superintendent must engage in a good faith effort to reach an agreement by back and forth bargaining. The plaintiffs also seek summary judgment on their claim that the defendant Superintendent and the Peabody School Committee violated the plaintiffs’ civil rights in violation of the Massachusetts Civil Rights Statute, M.G.L.c. 12, §§11H & 11I.
After a hearing, this court denies the plaintiffs’ motion for partial summary judgment. This court disagrees with the plaintiffs’ interpretation of these particular provisions of the Educational Reform Act. In addition, there are significant unresolved factual issues as to whether the defendants committed any violation of the Educational Reform Act or the Massachusetts Civil Rights Statute. Nevertheless, it does appear appropriate that this court make some declaration as to the interpretation of these relatively recent provisions of the Educational Reform Act in order to clarify some issues at any upcoming trial.
A major issue in this case concerns the duties of the school district Superintendent to discuss employment contracts with the individual school Superintendents. From late November 1993 onward, counsel for the plaintiffs (who is representing not only these two school principals but apparently other Peabody school principals) wrote to the defendant Superintendent requesting meetings to discuss the terms and conditions of the employment of these principals. There are disputed issues of fact as to why meetings did not occur in 1993 and 1994. The defendants claim that *59 the plaintiffs were attempting to engage in collective bargaining by employing (along with other principals) the same attorney. A meeting did occur in 1995 at which there was a discussion concerning the principals’ level of compensation for the past two years (i.e. 1993-1994 and 1994-1995 school years). The principals were offered a modest retroactive raise and told that the raise represented the maximum financial compensation for the principals. There was no discussion concerning the upcoming school year salary. This civil action was filed in 1995. Asserting the pendency of this suit, the Superintendent did not meet with the plaintiffs in 1996 or 1997.
This case primarily centers upon the wording of Chapter 71, §41. The wording of that section has changed. From 1993 to January of 1995, the provision prohibited school principals from being represented in collective bargaining and provided that “school principals may enter into individual employment contracts with the districts that employ them concerning the terms and conditions of their employment.” Section 41 was amended in January of 1995 to include more forceful language. Section 41 was changed to its present form and now reads in relevant part: “School principals, by whatever title their position may be known, shall not be represented in collective bargaining, but eveiy principal shall have the opportunity to meet and discuss individually the terms and conditions of his employment in his school district with such district’s Superintendent and may be represented by an attorney or other representative, and shall be employed under written contracts of employment.” The section also sets forth that the contract may not exceed three years in length and if the Superintendent fails to notify the principal of a proposed nonrenewal of his contract at least 60 days prior to the expiration date, the contract is automatically renewed for one additional year.
As to the school years 1993-1994 and 1994-1995, the legal issue is relatively straight forward. The statute at that time was phrased in discretionary, nonbinding language, i.e. “school principals may enter into individual employment contracts.” During those years there was no obligation on the part of the superintendent or the school committee to meet and discuss the terms and conditions of employment with the principal.
After January 1995, when the statutory language is changed to a mandatory requirement, the rights and obligations of the parties likewise changed. Pursuant to Section 41, the Superintendent had the mandatory duly to meet and discuss with the principals individually the terms and conditions of their employment for the upcoming year, years 1995-1996 and 1996-1997.[1] One of the primary questions presented by this suit is what does the term “meet and discuss” mean? The plaintiffs argue that the revised Section 41 requires that the Superintendent not only meet and discuss the terms and conditions of employment for the upcoming school year, but that he also negotiate with them in good faith and not threaten termination. According to the plaintiffs the terms “meet and discuss” and “negotiate” are synonymous. The plaintiffs actually go further than this and argue that the Superintendent could not, in essence, provide them with a bottom line salary figure and tell the principals to “take it or leave it.” Although acknowledging that there is no duty to agree, the plaintiffs argue that Section 41 requires that the Superintendent and the principals enter into negotiations involving a good faith give and take. This court does not agree with this expansive interpretation of Section 41.
The term “meet and discuss” is a legislative term of art. The legislature could easily have utilized the term negotiate, but did not. Indeed, since the legislature stressed that principals were not to be part of the collective bargaining process, its choice of the term “meet and discuss” stands in marked contrast to the term “negotiate” as it is used in the collective bargaining sense. It is plain for the context of Section 41 and from the overall Educational Reform Act that the legislature did not want the principals to be able to enter into collective bargaining. Instead, the Educational Reform Act increased the responsibilities of the school principals. The principals are now in charge of hiring teachers and staff and are responsible for the performance of their individual school. See School Committee of Lowell v. Local 159, 42 Mass.App. 690, 692 (1997). Based on their performance, the principals discuss individually with the school Superintendent whether they were to be kept on for another year, and if so, what would be the terms and conditions of their employment. The Superintendent is mandated to provide the principal an opportunity to “meet and discuss individually the terms and conditions of his employment.” One assumes that the more successful the principal, the more lucrative the salary package he or she might demand and obtain. That meeting and discussion, it is easily inferred, must be done in good faith. Cf. Anthony’s Pier 4, Inc. v. HBC Associates, 411 Mass. 451, 474-76 (1991) (implied covenant of good faith and fair dealing in every contract).
To meet and discuss in good fath, however, does not require a full-blown good faith negotiation as that term is used in the collective bargaining sense. Certainly, the Superintendent cannot engage in any deceptive or fraudulent practice or make any false presentation. The Superintendent, however, is entitled to meet and discuss an employment contract with the principal as would any worldly, bottom-line oriented business executive. Contrary to the plaintiffs’ assertions, the Superintendent could in good faith inform the principal of the salary and conditions of her employment for the upcoming year and honestly tell the principal that is the best package available for the principal. He can also inform the principal to “take it or leave it.” To the *60 extent that the plaintiffs interpret such words as a threat of termination, such an interpretation evidences undue sensitivity because such a tactic is permissible. In short, the Superintendent must utilize good faith but is entitled to provide an ultimatum to the school principal and is not required to engage in an extensive back and forth negotiation in an effort to reach a compromise agreement. See Commerce Clearing House Public Employee Bargaining Series, pp. 3763-3999 (§2500) (discussing how various states interpret the terms of “meet and discuss” or “meet or confer” in contrast to collective bargaining negotiation).
In summary, Section 41 requires that the Superintendent provide the principal an opportunity to meet on an annual basis (for the school year 1995-96 onward) and to discuss the terms and conditions of the principal’s employment for the upcoming year. Discussion must be exercised in good faith. For example, no fraudulent statements or knowing misinformation can be conveyed. The Superintendent, however, is entitled to give a “bottom line” position to the principal and inform that principal that the Superintendent is not going to waiver from that position. The Superintendent is also entitled to tell the principal that if the principal does not accept the offered term, the principal can look elsewhere for employment. Should an agreement be reached, the employment contract must be is writing.
Although it is undisputed that no meetings took place pursuant to Section 41 for the academic years 1995-1996 and 1996-1997, it is disputed as to why they did not take place. A lawsuit had already been filed in this matter prior to those academic years. In addition, the defendants complained that the attorney for the plaintiffs was representing other principals and, thus, was engaged in collective bargaining. Given these disputed issues of fact, it is not appropriate to issue any summary judgment on a matter of liability for those years. These are matters that are left for trial. Further, there is no basis to enter a summary judgment in the plaintiffs favor on the Massachusetts Civil Rights claims. Whether the defendants violated any Massachusetts statute is in question and, if so, it is particularly questionable whether the defendants violated plaintiffs’ rights by means of any sort of threat or coercion. Therefore, the plaintiffs’ motion for partial summary judgment is denied.

 The principals also had the statutory right to be represented by counsel at the meeting. The fact that a lawyer may also represent other principals would not necessarily bar him or her from the meeting or prevent the meeting from going forward. That counsel, however, cannot make any effort to bargain collectively. He must represent only the particular principal individually and advocate solely for that individual. If this obligation of individual representation forces him to criticize another client or disclose a client confidence, then a conflict of interest may arise necessitating withdrawal.